### MILLER et al. v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit.   June 22, 1917.)

#### No. 2231.

1. CRIMINAL LAW ☞97(3)—JURISDICTION OF PROSECUTIONS—OFFENSES ON THE HIGH SEAS.

Under Judicial Code Act March 3, 1911, c. 231, § 41, 36 Stat. 1100 (Comp. St. 1916, § 1023), providing that the trial of all offenses committed upon the high seas or elsewhere out of the jurisdiction of any particular state or district shall be in the district where the offender is found or into which he is first brought, where defendants were taken into custody on the high seas for taking fish from a pound off the coast of New Jersey, and were immediately brought ashore within that state, the District Court for that state was the proper tribunal to try the offense.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 183–188.]

2. LARCENY ☞5—PROPERTY SUBJECT OF LARCENY—FISH.

Fish in a pound used in catching fish, and from which the fish rarely escaped, were so far reduced to the possession of the company erecting the pound as to be the subject of larceny, though fish could escape from the pound, and in occasional instances probably did escape.

[Ed. Note.—For other cases, see Larceny, Cent. Dig. §§ 11–17.]

3. CRIMINAL LAW ☞97(3)—JURISDICTION OF PROSECUTIONS—OFFENSES ON THE HIGH SEAS.

The stealing of fish from a pound on the high seas off the coast of New Jersey, which fish have been reduced to the possession of the American citizens erecting the pound, is an offense punishable under the laws of the United States, as the character of the act is not changed by the fact that the theft is committed on the high seas.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 183–188.]

In Error to the District Court of the United States for the District of New Jersey; J. Warren Davis, Judge.

Harry Miller and others were convicted of an offense, and they bring error.   Affirmed.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

George F. Deiser, of Philadelphia, Pa., for plaintiffs in error.

Charles F. Lynch, U. S. Atty., of Newark, N. J., and Andrew J. Steelman, Asst. U. S. Atty., of Jersey City, N. J.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. The plaintiffs in error were indicted, convicted, and fined for the larceny of fish taken from a pound on the high seas off the coast of New Jersey. The indictment is drawn under sections 272 and 287 of the Criminal Code.[1] The facts are as follows:

[1] On May 13, 1916, the accused were taken into custody while fishing with hook and line from a boat moored to the pound, and were immediately brought ashore within the state. Under section 41 of the Judicial Code, which provides that:

"The trial of all offenses committed upon the high seas, or elsewhere out of the jurisdiction of any particular state or district, shall be in the district where the offender is found, or into which he is first brought"

—the District Court of New Jersey was the proper tribunal to try whatever offense had been committed. 1 U. S. Comp. Stat. Annot. p. 1092, and notes. The pound belonged to the Hilton & Hilton Fish Company, of Anglesea, N. J., and was in the Atlantic Ocean more than 3 miles from shore. It was built and maintained in the manner required by the Secretary of War, who issued a permit or license that need not be further referred to, as no weight was laid upon it either below or on the argument of this writ. A pound such as this is erected by combining piles and nets. Piles 80 or 90 feet long, whose diameter is a foot or more at the base and from 3 to 5 inches at the top, are driven into the bed of the ocean about 12 feet, and are also anchored in place. They are 20 or 30 feet apart, and these spaces are closed by nets broad enough to reach nearly, if not quite, from the top of the piles to the bottom. The structure runs at a right angle to the shore, so that the fish, obeying their natural tendency to swim away from the land, are gradually led to the outer section of the pound. A single line of piles, called the lead, runs from the starting point to a circle called the "forebay," beyond which and at the outer extremity is a similar circle called the "pocket." This contains a net in which there is an opening 7 feet wide and 8 feet high, facing the shore. This opening is never closed until the pocket is about to be emptied, when the net is hauled up toward the surface and is turned over to prevent the fish from escaping while they are being scooped out and transferred to the boats.

At the time in question, the net had not been hauled and the opening had not been closed. The accused went to the pocket in their boat, dropped their hooks into it, and were seen to catch several fish. On the facts no defense was offered, the accused relying on the legal proposition that their conduct was not indictable. The accused and the company are citizens of the United States. The District Court instructed the jury in substance as follows:

Fish in the Atlantic Ocean belong to nobody until they have been reduced to possession. After this has been done, the individual that has acquired the possession gains a qualified right of property that may be the subject of larceny. They are reduced to possession when the indi-

[1] Comp. St. 1916, §§ 10445, 10460.

vidual so confines them within his immediate power that they cannot escape and resume their natural liberty. If the accused caught the fish in question out of the pound, and if the fish had been reduced to possession so that the company had acquired a property right, the defendants are guilty. On the other hand, if beyond a reasonable doubt they did not take the fish from the pound, or if the fish had not been reduc-. ed to possession in the sense defined, the defendants must be acquitted.

[2] The verdict, therefore, establishes the fact that the fish had been reduced to possession by confining them within the company's power, so that they could not escape and resume their natural liberty. The only error assigned is the court's refusal to direct an acquittal, and the objection is based (1) on the lack of evidence that possession of the fish had been acquired, or (2) on the fact that the felonious taking was upon the high seas. In our opinion neither ground is sufficient. Certainly the natural liberty of the fish was so much restrained that they were unlikely to swim away, although in occasional instances they no doubt could escape, and probably did escape. This, however, was exceptional, and we think the company had taken all reasonable steps to assert dominion over the fish, and to keep them safe until they could be taken out of the water. Even if they had been in a boat or strung on a line, they would still have been able to escape sometimes, and we see no reason to apply a standard so severe as complete security. There was evidence tending to prove that fish rarely escape from a pound, and the verdict establishes the fact against the present contention.

[3] Unquestionably the taking was upon the high seas, but it was nevertheless a felonious taking, and we do not appreciate the force of the argument on this point. Theft is theft, wherever committed, and the fact that the thief steals on the high seas, instead of on the land, does not change the character of his act. If the fish had become the qualified property of an individual, the law of some jurisdiction—in this case, the law of the United States—protected them in a pound, just as it would have protected them in a boat or on a line. The vital question was whether the fish had been sufficiently reduced to possession, so as to become the qualified property of the company, and, if this was true, the accused were guilty. A similar decision in a closely analogous situation on Lake Erie is Ohio v. Shaw, 67 Ohio St. 157, 65 N. E. 875, 60 L. R. A. 481, where an exhaustive note on the whole subject may be found.

The judgment is affirmed.

